**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**THERMO-PLY, INC.,**
a Florida Corporation,

      **Plaintiff,**

v.                                                      Case No. 8:05-CV-779-T-17

**THE OHIO WILLOW WOOD COMPANY,**
an Ohio corporation;
**SILIPOS, INC.,**
a Delaware corporation;
**SOUTHERN PROSTHETIC SUPPLY, INC.,**
a Georgia corporation;
**HANGER PROSTHETICS & ORTHOTICS, INC.,**
a Delaware corporation; and
**SEATTLE SYSTEMS, INC.**
a California corporation,

      **Defendants.**
_____/

**PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE THE TRIAL TESTIMONY**
**OF WAYNE DALY—DEFENDANT'S PAID "FACT" WITNESS**

Plaintiff, Thermo-Ply, Inc. moves the Court on the following grounds to preclude the testimony of Wayne Daly, and any argument or evidence relating to same, at trial:

1. Defendant, The Ohio Willow Wood Company ("OWW") disclosed Mr. Daly as a "fact" witness in this case and has never disclosed Mr. Daly as a Rule 26(a) expert witness. Despite listing him as a pure fact witness who purports to have knowledge of supposed prior art relating to Thermo-Ply's patent at issue, OWW improperly paid Mr. Daley (both directly and indirectly) for his testimony in this case.

2. Additionally, at the time that OWW listed and improperly paid Mr. Daly as a pure fact witness in this case, OWW retained Mr. Daly as an <u>expert</u> witness in patent infringement cases OWW brought against other competitors.

3. Specifically, OWW retained Mr. Daly as an expert witness in its case against its competitor ALPS South (the "*OWW v. ALPS* Case") and in its case against its competitor and Thermo-Ply's distributor, DAW Industries, Inc. (the "*OWW v. DAW* Case"). To make matters worse still, OWW's patent at issue in both the *OWW v. ALPS* Case and the *OWW v. DAW* Case is the same '237 Patent that is the subject of Thermo-Ply's declaratory judgment action (Count IV) in this case.

4. Due to OWW's payments to Mr. Daly in this case and his role as an expert witness for OWW in other cases, Mr. Daly admitted in his deposition that he did not know if he was testifying as a fact witness or as OWW's paid expert witness when Thermo-Ply deposed him in this case.

5. Mr. Daly's confusion is understandable. OWW improperly paid Mr. Daly direct compensation far beyond the lawful rate allowed for a non-expert witness under federal law and the code of professional conduct.

6. In addition to improper direct payments, OWW improperly compensated Mr. Daly in other ways for his testimony in this case. First, OWW agreed to fly Mr. Daly to the location of his choice for a deposition, pay for his meals and lodging for the weekend before his deposition, and pay all of his other trip expenses. Mr. Daly chose for OWW to fly him from Seattle, Washington to Columbus, Ohio so Mr. Daly could attend a class being

presented by OWW in addition to attending his deposition.  OWW paid for all of Mr. Daly's travel expenses for that trip, including his hotel, meals, and airfare.

7. OWW additionally compensated Mr. Daly for his testimony by giving him free prosthetic liners.  In a clear violation of professional ethics, Mr. Daly then sold those free prosthetic liners to his amputee patients.

8. Because OWW's direct and indirect compensation to Mr. Daly grossly exceeded the reasonable compensation allowed by law to be paid to a fact witness, OWW should be precluding from presenting, or using in any way, at trial the testimony of its paid "fact" witnesses Mr. Daly.

WHEREFORE, Plaintiff, Thermo-Ply, Inc. respectfully requests the Court grant this Motion, exclude Wayne Daly's testimony, as well as any argument or evidence relating to such testimony, at trial, and grant such other and further relief this Court deems just and appropriate.

## SUPPORTING MEMORANDUM OF LAW

In accordance with Rule 3.01(a), Rules of the U.S. District Court for the Middle District of Florida, Thermo-Ply submits supporting memorandum of law.

### A. Payments to Fact Witnesses Are Prohibited

OWW's direct and indirect payments to Mr. Daly are improper under both federal law and the Florida Rules of Professional Conduct.  For reasons too obvious to state, parties are prohibited from paying fact witnesses for their testimony.  Federal law expressly provides for the **imposition of sanctions** against anyone who:

> gives, offers, or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding…before any court, …or officer authorized by the laws of the United States to hear evidence or take testimony.

18 U.S.C. §201(c). Although 18 U.S.C.A. §201(d) excepts from this prohibition, payment of a statutory witness fee, the "reasonable" cost of incurred travel expenses, and the "reasonable value of time lost" in attending trial, hearing, or other proceeding, none of these exceptions apply here.

Likewise, Florida's Rules of Professional Conduct limit compensation that may be paid to a witness. Rule 4.3-4(b) prohibits an attorney from:

> Offer[ing] an inducement to a witness, except a lawyer may pay a witness reasonable expenses incurred by the witness in attending or testifying at proceedings; … and reasonable compensation to reimburse a witness for the loss of compensation incurred by reason of preparing for, attending, or testifying at proceedings.

Rule 4-3.4 (b), Florida Rules Professional Conduct.

Once again, the exceptions set forth in Rule 4-3.4 are not applicable.

### B. **OWW Excessively and Unreasonably Compensated Mr. Daly**

OWW's direct payments to its fact witness Mr. Daly, its payment for a weekend trip of Mr. Daly's choosing, and its gifts of free liners, far exceed the outermost limits of "reasonable" compensation. Not surprisingly, OWW failed to disclose its improper payments to Mr. Daly. Although OWW had Mr. Daly execute a declaration as a "fact" witness, neither OWW nor Mr. Daly voluntarily disclosed OWW's payments to him. Rather, it was not until Thermo-Ply's counsel deposed Mr. Daly that the payments came to

light.  Under examination by Thermo-Ply's counsel, Mr. Daly ultimately admitted that OWW paid him either $100 or $110 per hour for "paper review" plus $130 per hour for "personal testimony."  *See* Transcript of October 10, 2006 Deposition of Wayne Daly, at p. 116, lines 5-14.[1]  Mr. Daly later produced documentation that OWW paid him an average hourly rate of approximately $128.08.  *See* Exhibit "B".

The pretext offered by Mr. Daly for OWW's direct payments to him does not withstand scrutiny.  Mr. Daly claimed that OWW was merely paying him for "his time" (October 2006 Dep. Trans. at p. 116, lines 5-7) or his "lost salary time."  Transcript of October 5, 2007 Deposition of Wayne Daly at p. 14, lines 2-6, 18-20.[2]  It turns out, however, that **OWW paid Mr. Daly more than three (3) times his normal hourly rate.**

At his deposition, Mr. Daly testified that his annual salary was $80,000.  *See* October 2007 Dep. Trans. at p. 80, lines 10-11.  Accepting his testimony as true and using a standard 40-hour work week and 52 weeks per year, **Mr. Daly's salary converts to an hourly rate of $38.46—less than one-third of the $128.08 per hour OWW paid him**.  Therefore, OWW unquestionably compensated Mr. Daly far in excess of the "*reasonable value of time lost*" in attending his deposition and far more than "*reasonable* compensation to reimburse [him] for the *loss of compensation* incurred by reason of preparing for, attending, or testifying at proceedings."

---

[1] Hereinafter, cited and referred to as "October 2006 Dep. Trans. at p. __, lines __. Excerpts of the October 2006 deposition transcript are attached hereto as Exhibit "A".

[2] Hereinafter, cited and referred to as "October 2007 Dep. Trans. at p. __, lines __. Excerpts of the October 2007 deposition transcript are attached hereto as Exhibit "C".

During his first deposition, Mr. Daly was confused as to whether or not he was an expert witness for OWW. His confusion is understandable. Documents later produced by Mr. Daly disclosed offers by OWW to hire him as both an expert <u>and</u> fact witness in this case. *See* email correspondence between Wayne Daly and Eric Gayan, Esq., dated March 22, 2006, attached hereto as Exhibit "D".

Rather than choosing to disclose Mr. Daly as an expert witness, OWW creatively found additional ways to both increase and conceal the extent of its already excessive payments for Mr. Daly's testimony. OWW offered to fly Mr. Daly "***somewhere you might want to spend a weekend***, etc. – as ***we would pay for your travel***" for his second deposition. *See* email correspondence between Wayne Daly and Eric Gayan, Esq., dated July 14, 2006, attached hereto as Exhibit "E" (emphasis added). Mr. Daly, who resides in Seattle, Washington, chose to be deposed at the offices of OWW's counsel in Dublin, Ohio because there was a class he wanted to attend in nearby Columbus, Ohio. *See* email correspondence between Wayne Daly and Eric Gayan, Esq. dated September 6, 2007, attached hereto as Exhibit "F". As agreed, OWW paid for Mr. Daly's travel, lodging, and meals in connection with his trip to Ohio. Transcript of October 5, 2007 Deposition of Wayne Daly at p. 13, line 21 – p. 14, line 3.

OWW further compensated Mr. Daly (a prosthetist) by giving him free prosthetic liners. Rather than provide these free liners to his amputee patients at no cost, Mr. Daly charged his patients and was "reimbursed" for those free liners through Medicaid. *See* October 2006 Dep. Trans. at p. 94, line 21 - p. 96, line 11; p. 122, line 11 - p. 123, line 13;

6

October 2007 Dep. Trans. at p. 82, lines 8-11, 20 – p. 83, line 10.  Specifically, Mr. Daly charged his amputee patients *$650.00* for each **free** liner given to him by OWW.  *See* October 2006 Dep. Trans. at p. 130, lines 13-19.

Not surprisingly, OWW does not normally give away its products.  Mr. Daly was the ***only*** prosthetist at his place of employment, The Center for Prosthetics Orthotics ("The Center"), who received free liners from OWW.  *See* October 2007 Dep. Trans. at p. 84, lines 13-17.  During his third deposition, while testifying as the corporate representative for The Center,[3] Mr. Daly claimed, for the first time, that he received the free liners from OWW in exchange for providing "consulting services."  *See* Transcript of January 10, 2008 Deposition of Wayne Daly, at p. 58, line 15 - p. 59, line 3[4].

Neither OWW nor Mr. Daly disclosed before Mr. Daly's first deposition that he had a "financial and contractual relationship" with OWW as a consultant or was serving as an expert witness in two other cases at the same time he was also being paid by OWW to be a "fact" witness in this case.  *See* October 2007 Dep. Trans. at p. 69, line 10 – p. 70, line 13.  Thermo-Ply discovered this information only by "luck[ing] out and… asking a good question at the end of the deposition."  *See* October 2006 Dep. Trans. at p. 118, lines 15-18.

OWW should not benefit from any testimony from its inappropriately paid "fact

---

[3]    In a final form of indirect compensation, Mr. Daly admitted that OWW paid for its trial counsel in this case, the Standley Law Group, to represent Mr. Daly's company at the deposition and OWW.  January 2008 Dep. Trans. at p. 5, lines 1-11.

[4]    Hereinafter, cited and referred to as "January 2008 Dep. Trans. at p. __, lines __."  Excerpts of the January 2008 Dep. Trans. are attached hereto as Exhibit "G".


witness." OWW's compensation to Mr. Daly, far in excess of what is allowed under Federal law and Florida's Rules of Professional Conduct, should preclude OWW from using, in any way, testimony from Mr. Daly at trial.

Without question, OWW knew that its compensation of Mr. Daly-- a "fact witness" -- was grossly improper. OWW itself previously acknowledged and argued that it is simply wrong to pay a fact witness for his testimony. In the patent infringement lawsuit styled *The Ohio Willow Wood Company v. Alps South LLC*, Case No. C2-04-1223, pending in the U.S. District Court for the Southern District of Ohio, OWW expressly argued that it was improper for a defendant to pay a fact witness. Like Thermo-Ply here, OWW moved to preclude the defendant's fact witness from testifying at trial "***because he was [g]enerously [c]ompensated by [the defendant] for [o]btaining [e]vidence.***" *See* Plaintiff The Ohio Willow Wood Company's Motion to Strike the Declaration and Affidavit of Robert Gailey and Preclude the Testimony of Robert Gailey at Trial, at p. 3, attached hereto as Exhibit "H" (emphasis added). In OWW's motion to strike, OWW expressly argued that paying witnesses "beyond their incurred expenses" violates public policy, the rules of professional conduct, and Federal law. *See Id.* at pp. 3 and 6. Thermo-Ply agrees with OWW's analysis and conclusions.

      C.     **OWW Should Not Benefit From Its Improper Payments to Mr. Daly**

OWW's covert and improper payments to Mr. Daly merit the preclusion of his testimony. To allow OWW to benefit from its improper compensation would abuse the integrity of this proceeding.

This Court has the inherent authority to protect the integrity of the judicial process and sanction conduct which abuses that process. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 45 111 S.Ct. 2123, 2133 (1991). In exercising this authority, the Court must be mindful of its obligation "to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.*

The integrity of the process is abused where a party seeks to introduce evidence through a paid "fact" witness. Jurors are understandably more trustful of testimony from witnesses who are presented as mere "fact" witnesses, and therefore deemed to be unbiased, than expert witnesses who are viewed with skepticism for their admittedly paid-for testimony. To maintain the unbiased nature of this testimony, the rules of this Court and Florida's Code of Professional Responsibility prohibit compensating a fact witness for more than his reasonably incurred expenses. Under Rule 2.02 (c), of this Court's Local Rules, OWW's counsel was, and is, bound to abide by Florida's Code of Professional Responsibility, as well as other ethical requirements governing the professional behavior of members of The Florida Bar. Rule 4-3.4(b) of Florida's Code of Professional Responsibility prohibits counsel from offering any inducement to a witness except for payment for reasonably incurred expenses and lost time for testifying.

With the payments for Wayne Daly's testimony, OWW seeks to abuse the judicial process through the admission of Wayne Daly's testimony. Because OWW already bought and paid for Mr. Daly's testimony in this case, that evidence is already "tainted." The Court's best recourse – which it has the discretionary authority to take – is to preclude OWW

from using, in any way, Wayne Daly's testimony at trial.

Such a sanction has been approved by the Eleventh Circuit. In *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Assoc.*, 865 F. Supp. 1516, 1526-27 (S.D. Fla. 1994): the district court found that a party and its counsel violated Rule 4-3.4 (b) through payments to witnesses and imposed sanctions by excluding all evidence tainted by the ethical violations. On appeal, the Eleventh Circuit affirmed the sanctions holding that they did not constitute an abuse of discretion. *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Assoc.*, 117 F.3d 1328, 1335 n. 2 (11th Cir. 1997). The Court should do likewise here.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and accurate copy of the foregoing was electronically filed with the Court on this 17th day of January, 2014.  Notice of this filing will be automatically sent by the Court's CM/ECF system to:  **Michael Gay, Esq.**, mgay@foley.com, Foley & Lardner, LLP, 111 N. Orange Avenue, Suite 1800, P.O. Box 2193, Orlando, Florida 3282-2193; **Benjamin H. Hill, III, Esq.**, bhill@hwlaw.com, **William C. Guerrant, Jr., Esq.**, wguerrant@hwhlaw.com, **Patrick J. Risch, Esq.** prisch@hwhlaw.com, Hill Ward Henderson, 101 E. Kennedy Blvd, Suite 3700, P.O. Box 2231, Tampa, Florida 33601-2231; and **Jeffrey S. Standley, Esq.,** jstandley@standleyllp.com, **James L. Kwak, Esq.,** jkwak@standleyllp.com, **F. Michael Speed, Esq.**, mspeed@standleyllp.com, **Michael R. Stonebrook, Esq.,** mstonebrook@standleyllp.com, Standley Law Group LLP, 6300 Riverside Drive, Dublin, Ohio 43017.

 s/ Richard E. Fee
Richard E. Fee, Esq.
Florida Bar No. 813680
Kathleen M. Wade, Esq.
Florida Bar No. 127965
FEE & JEFFRIES, P.A.
1227 North Franklin Street
Tampa, Florida  33602
(813) 229-8008
(813) 229-0046 (Facsimile)
rfee@feejeffries.com
kwade@feejeffries.com

Trial Counsel for Plaintiff,
Thermo-Ply, Inc.