# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**THERMO-PLY, INC.,**
**a Florida Corporation,**

       **Plaintiff,**

**v.**                              **Case No. 8:05-CV-779-T-17**

**THE OHIO WILLOW WOOD COMPANY,**
**an Ohio corporation;**
**SILIPOS, INC.,**
**a Delaware corporation;**
**SOUTHERN PROSTHETIC SUPPLY, INC.,**
**a Georgia corporation;**
**HANGER PROSTHETICS & ORTHOTICS, INC.,**
**a Delaware corporation; and**
**SEATTLE SYSTEMS, INC.**
**a California corporation,**

       **Defendants.**

_____/

## PLAINTIFF, THERMO-PLY, INC.'S MOTION IN LIMINE TO EXCLUDE THE "EXPERT" REPORT SIGNED BY JOHN MICHAEL AND HIS TESTIMONY

Plaintiff, Thermo-Ply, Inc. ("Thermo-Ply") moves the Court on the following grounds to exclude the purported expert report (the "Report") signed, but not "prepared," by John Michael ("Mr. Michael"), as well as any testimony by Mr. Michael, at trial:

1.      Although Mr. Michael signed the Report, he did not actually *write* the material portions of the Report. Rather the Report, including all its opinions, was ghost-written by an attorney for Defendant, The Ohio Willow Wood Company ("OWW").

1

2.     The fact that the Report was written by one of OWW's attorneys, and not Mr. Michael, is not surprising.  Mr. Michael is a prosthetist, not a patent attorney, and the Report's opinions solely relate to patent invalidity based on:

     a.     Anticipation under 35 U.S.C. §102(b);

     b.     Obviousness under 35 U.S.C. §103(b);

     c.     Enablement under 35 U.S.C. §112; and

     d.     Written description under 35 U.S.C. §112.[1]

Mr. Michael was unfamiliar with the legal standards for patent invalidity under any these sections of the patent statutes and had not even read them at the time he signed the Report.

3.     Preparation of the Report by OWW's counsel, rather than by its expert, defies the Rules of Civil Procedure and renders the Report and the testimony of Mr. Michael inadmissible at trial.

4.     The Report and Mr. Michael's testimony also should be excluded because Mr. Michael was not, and is not, qualified to testify competently regarding the opinions regarding patent validity set forth in the Report.

5.     The Report and the testimony of Mr. Michael is further inadmissible because it will ***not*** assist the trier of fact "through the application of *scientific, technical, or specialized expertise*, to understand the evidence or to determine a fact in issue."  No expert applied anything to prepare the opinions in the Report.   Rather, the only expertise reflected by the opinions in the Report is the *legal* expertise of one of OWW's lawyers.

---

[1] A copy of the Report is attached to this Motion as Exhibit A.

6. Finally, the Report and the testimony of Mr. Michael should be excluded from evidence as a sanction for Mr. Michael's spoliation of evidence. Mr. Michael did not preserve *any* drafts of the Report, and never produced the metadata for those drafts. Moreover, OWW's counsel never told Michael to preserve evidence and never produced copies of the drafts, despite an express request from Thermo-Ply's counsel, either.

WHEREFORE, Plaintiff, Thermo-Ply, Inc. respectfully requests the Court grant this Motion, exclude the Report and any expert testimony by John Michael, and grant such other and further relief this Court deems just and appropriate.

## MEMORANDUM OF LAW

The so-called "expert" Report, materially prepared by OWW's attorney, together with the testimony of John Michael (who signed the Report), should be excluded from evidence at trial. The opinions expressed in the Report and the Report itself fail to satisfy the rules of civil procedure, evidence, and fair play.

### I. The Report Should Be Excluded Because It Was Prepared By OWW's Attorney And Not The Purported Expert, Mr. Michael

Rule 26(a)(2)(B), Federal Rules of Civil Procedure, requires that an expert report be "***prepared*** and signed" ***by the expert*** – *not* just signed. (Emphasis added). The language does not permit an expert report to be "prepared" by the attorney. Although the advisory committee notes to Rule 26(a)(2)(B) explain that the rule does not preclude an attorney giving *assistance*, the attorney may ***not*** ghost-write the report. *Bekaert Corp. v. City of Dyersburg*, 256 F.R.D. 573, 578 (W.D. Tenn. 2009)("preparation implies involvement other than perusing a report drafted by someone else and signing one's name at the bottom to signify agreement."); *Dataquill Ltd. v. Handspring*, 2003 WL 737785, *4

3

(N.D. Ill. Feb. 28, 2003)(striking expert report because, among other things, expert did not actually write report where large portions of party's interrogatory responses were merely typed into the report by counsel); *see also Linq Indus. Fabrics, Inc. v. Intertape Polymer Corp.*, 2004 WL 5575053, *1 (M.D. Fla. June 21, 2004).

In *Linq Indus.*, the Middle District of Florida denied a motion to strike an expert report, but provided guidance as to the limited the scope of "attorney assistance" that is permissible in preparing an expert report under Rule 26. Counsel may "'put pen to paper or fingers to keyboard' *so long as the expert expresses his opinions to counsel <u>before</u> the report is generated and remains involved in the editing of the report.*" 2004 WL 557575053 at *1 (emphasis added). In other words, at a minimum, the expert must reach his or her opinions *before* the attorney prepares the expert report.

Here, OWW's did exactly what the Court in *Linq Indus.* deemed improper. OWW's counsel provided Mr. Michael with the opinions (argument actually) regarding patent invalidity and all the materials used to support those opinions before Mr. Michael developed any opinions. In short, rather than assisting an expert in drafting a report that expresses the opinions reached by the expert, OWW's counsel prepared those opinions in a draft report and presented them to Mr. Michael to sign and testify about. OWW's actions are improper and its counsel's use of Mr. Michael as little more than a sock puppet for its invalidity arguments should not be condoned.

The Report unquestionably memorializes the opinions of OWW's attorney rather than Mr. Michael's independently-reached opinions. According to Mr. Michael's own testimony, Mr. Michael formed his opinion by reading *OWW's attorney's initial draft*

*Report* and the prior art references provided to him by OWW's attorney. Mr. Michael admitted in his deposition that he "probably had [his] first group of preliminary opinions when [he] first reviewed the material" from OWW's counsel – which included the draft Report written by OWW's attorney. April 19, 2007 Deposition of John Michael ("Michael Depo."), p. 87, line 21 – p. 88, line 1.[2] "[A]s [he] read each section, [he] would have more preliminary opinions, more impressions, and then [he] finally pulled them together into a final opinion on the day [he] signed it." Michael Depo, p. 88, lines 6-10.

Unsurprisingly, Mr. Michael's "preliminary opinions" and "final opinion" were *exactly* what OWW's attorney wrote and presented to him in the initial draft Report. This conclusion is not based on speculation – it is based on Mr. Michael's own testimony. Mr. Michael testified as follows in his deposition regarding the creation of the Report:

A. The section titled "Legal Standards": Mr. Michael was "sure" this paragraph was written by OWW's counsel. Michael Depo, p. 67, lines 11-13.

B. The section titled "Anticipation": Mr. Michael did not draft the invalidity based on anticipation paragraph. Michael Depo, p. 67, lines 14-16. Mr. Michael has *never even read* 35 U.S.C. §102(b) on anticipation. Michael Depo, p. 67, lines 21-23. His only understanding of Section 102(b) is based solely on what OWW's lawyer told him. Michael Depo, p. 176,

---

[2] Hereinafter, referenced to and cited as "Michael Depo., p. ____, line ___." A copy of the entire John Michael April 19, 2007 deposition transcript is attached hereto as Exhibit B.

lines 7-20.  Despite the fact Mr. Michael *never read* Section 102(b), and has *no personal understanding* of that section, the Report opines that the '617 Patent was invalid for anticipation under 35 U.S.C. §102 (b).   *See* Report at p. 2.

C.      <u>The section titled "Obviousness"</u>:   The Report's two paragraphs on invalidity based on obviousness were also prepared by OWW's counsel. Michael Depo, p. 68, lines 9-15.  Mr. Michael has *never read* 35 U.S.C. §112's provision on obviousness.  Michael Depo, p. 69, lines 1-3.  His only understanding of Section 112 is based solely on what OWW's lawyer told him.  Michael Depo, p. 179, lines 21-23; p. 180, line 20-p. 181, line 4. Despite the fact Mr. Michael *never read* Section 112, and has *no personal understanding* of the section, the Report opines that the '617 Patent was invalid for obviousness under 35 U.S.C. §112.   *See* Report at p. 2.

D.      <u>The section titled "Enablement"</u>:  The Report's entire enablement section was prepared by OWW's counsel. Michael Depo, p. 69, lines 7-13.  Mr. Michael has *not read* 35 U.S.C. §112's provision on enablement.  Michael Depo, p. 69, lines 1-3.  Despite the fact Michael *never read* Section 112, the Report opines that the '617 Patent was invalid for lack of enablement under Section 112.  *See* Report at p. 2.

E.      <u>The section titled "Written Description"</u>: This section of the Report, too, was written by OWW's attorney.  Michael Depo, p. 69, lines 14-17.  Mr. Michael has *not read* 35 U.S.C. §112's provision on written description.

Michael Depo, p. 69, lines 1-3.  Despite the fact Mr. Michael *never read* Section 112, the Report opines that the '617 Patent was invalid for lack of enablement under Section 112.  *See* Report at p. 3.

F.    <u>Invalidity Claim Charts for the '617 Patent</u>:  The paragraph was written by OWW's attorney.  Michael Depo, p. 79, lines 8-18.  With regards to the Report's statement, that Mr. Michael had "identified extensive prior art that anticipates or makes obvious the claims at issue," it is "substantially correct" that Mr. Michael  *"was merely identifying what had been given to [him] by Ohio Willow Wood's lawyers.*"  Michael Depo, p. 195, lines 4-19 (emphasis added).  Thus, Mr. Michael did not investigate or otherwise find the prior art.  He simply listed the documents that OWW's attorney gave him.

G.    <u>Prior Art References Tables 1, 2, 3, 4, and 5</u>:  OWW's attorney drafted the three columns ("<u>No.</u>", "<u>Key Component</u>", and "<u>Disclosure</u>") and the information contained within the three columns for each of the five prior art references tables.  Michael Depo, p. 75, line 22- p. 76, line 9; p. 76, line 18-24; p. 77, lines 16-21; p. 78, lines 8-13; p. 79, lines 2-7.  If Mr. Michael made any revisions to the tables at all, they would have been, at most, "minor".  Michael Depo, p. 76, lines 7-9; p. 76, lines 21-24; p. 77, lines 21-23.  Mr. Michael does not recall any changes he made.  Michael Depo, p. 77, line 24-p. 78, line 3.  It was "unlikely" that he made any changes to Table 4.  Michael Depo, p. 78, lines 16-17.

H.    <u>Table for '617 Patent</u>:  OWW's attorney drafted the chart in whole. Michael Depo, p. 79, line 21 – p. 80, line 1.  Mr. Michael does not remember any specific modifications to the table regarding Claim 1, "but …they would have been relatively minor.  They would have been a word or two for clarity." Michael Depo, p. 80, lines 2-8.  Mr. Michael was "virtually certain" that the attorney drafted the Claim 9 invalidity contentions.  Michael Depo, p. 81, lines 6-12.  Mr. Michael does not think he made any changes to the claim 9 invalidity contentions.  Michael Depo, p. 81, lines 18-21.  OWW's counsel also provided the Claim 17 invalidity section.  Michael Depo, p. 81, line 22 – p. 82, line 4.  "If any minor changes were necessary, [Mr. Michael] would have done that [but] [he] do[es]n't recall any substantive disagreement with what they had provided."  Dep. Trans. at p. 82, lines 8-11.

I.    <u>"Conclusion"</u>:  Mr. Michael was "sure" that "the bulk of" the conclusion he "took from the boilerplate" Report written by OWW's counsel. Michael Depo, p. 84, lines 4-9.  The first sentence "sounds like it came from the boilerplate" provided by the attorney.  Michael Depo, p. 82, line21 – p. 83, line 3.  Because of the second sentence "phraseology[,] [Mr. Michael] would be pretty certain that [he] took [it] from the document provided" by OWW's attorney.  Michael Depo, p. 83, lines 15-18.  The entire second paragraph was "also part of the boilerplate." Michael Depo, p. 83, lines 20-23.  The third paragraph was

"predominantly" the boilerplate provided by OWW's attorney. Michael Depo, p. 84, lines 10-18. Ironically, Mr. Michael was "pretty sure" the phrase "it is my conclusion that one of ordinary skill was in possession of sufficient teachings to construct the prosthetic devices claimed in the '617 patent at least one year before the filing date of the '617 patent," "would have come from the boilerplate directly." Michael Depo, p. 84, lines 10-18. Mr. Michael also thought that the sentence "[f]urthermore, it is my conclusion that Claim 1 is additionally invalid for requiring a use-based limitation that cannot be reasonably evaluated" "came from the boilerplate, as well…[he] may have written the prefatory part, but the bulk is from the boilerplate." Michael Depo, at p. 85, lines 2-10. Michael further admitted that even the last paragraph of the Conclusion section "might have come directly from the boilerplate if that's the way they did it." Michael Depo, p. 85, lines 18-23.

Mr. Michael was unfazed by the idea that a judge reading the Report would assume Mr. Michael had drafted it. Michael Depo, p. 40, lines 2-20. According to Mr. Michael, *he* is the author of a document he signed "[i]f I've *read* it completely, if I *agree* with every word, if I *have nothing to add*, yes." Dep. Trans. at p. 40, line 21 – p. 41, line 2 (emphasis added). By this same reasoning, a person who read, wholly agreed with, and then signed a copy of the U.S. Constitution is also the author of that document. Mr. Michael's "authorship by agreeing and signing" theory defies the law, to say nothing of common sense.

## II. The Report And Mr. Michael's Testimony Thereon Should Also Be Excluded Because They Do Not Meet The Standards For Admissibility

To the extent the Court deems any of the Report to have been "prepared" by Mr. Michael in accordance with Rule 26(a)(2)(B), Federal Rules of Civil Procedure, the Court should still exclude it and Mr. Michael's testimony from evidence at trial for failing to meet the standards for admissibility under Rule 702, Federal Rules of Evidence. Obviously **all** sections of the Report written by OWW's attorney would **not be admissible** under Rule 702, Federal Rules of Evidence.

For expert testimony to be admissible, the Court must consider whether:

> the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

### A. Mr. Michael is Not Qualified to Render Opinions Regarding Patent Invalidity.

Mr. Michael's testimony is not admissible because he was not, and is not, qualified to testify competently regarding the opinions regarding patent invalidity set forth in the Report. Rather, Mr. Michael's entire knowledge, experience, training, and education on these terms – and patent law terminology overall -- however, was based *solely* upon "instructions" from OWW's attorneys. Michael Depo, p. 179, lines 6-12; p. 181, lines 1-4.

Mr. Michael used the term "invalid" in the Report because "it was in the boilerplate and [he] agreed with it when [he] read it." Michael Depo, p. 189, lines 20-23.

Further, his understanding of what the term "invalidity" means, legally, was based only on the information provided by OWW's counsel. Michael Depo, p. 160, line 4 – p. 161, line 9. "[T]he first time anybody …ever asked [Mr. Michael] if [he] thought a patent was invalid was when Ohio Willow Wood lawyers talked to [him] about [the '617] patent." Michael Depo, p. 189, lines 6-11.

Likewise, Mr. Michael's understanding of the key term used in the Report's opinions regarding patent invalidity is based on what he learned from OWW's attorneys. "All of [Michael's] legal understanding" of the term "obviousness … as that term is used in [the] report" "is from instruction received at [OWW's] firm or by [OWW's] firm." Michael Depo, p. 179, lines 21-23; p. 180, line 20-p. 181, line 4. Moreover, Mr. Michael, a prosthetist, has not done any study on patent law outside of his meetings with OWW's attorneys. Michael Depo, p. 178, line 22 – p. 179, line 5. "Everything" Mr. Michael knows about patent law "is from the instruction [he] received from [OWW's law] firm." Michael Depo, p. 179, lines 6-12. Mr. Michael does not have "any practical experience dealing with patents or patent applications", or "patent prosecution," or "patent litigation." Michael Depo, p. 179, lines 13-20.

In sum, Mr. Michael's testimony above shows he is far from qualified to testify competently regarding the matters set forth in the Expert Report.

**B.** **Mr. Michael Cannot Assist the Trier of Fact Because He Lacks Expertise Regarding the Opinions in the Report.**

As *Daubert* is interpreted and applied by the Eleventh Circuit, expert testimony is not admissible unless "the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a

fact in issue." *Frazier*, 387 F.3d at 1260. Neither the Report nor Mr. Michael's testimony regarding the opinions in the Report would "assist the trier of fact, through the application of *scientific, technical, or specialized expertise*, to understand the evidence or to determine a fact in issue" because <u>only</u> OWW's attorney's *legal expertise* is reflected in the opinions contained in the Report. To permit Mr. Michael to be the mouthpiece for the opinions of OWW's attorneys would be tantamount to allowing OWW's attorneys to testify in disguise.

### III. Excluding The Report And Mr. Michael's Testimony From Trial Is Warranted As a Sanction For The Destruction Of Evidence.

Although Mr. Michael was obligated to preserve all drafts of the Report, including the initial draft report sent to him by OWW's counsel, he did not. *See* Rule 26(a)(2), Federal Rules of Civil Procedure, Advisory Committee Notes. Michael Depo, p. 38, lines 4-5. Mr. Michael destroyed the initial report sent to him by OWW's counsel by typing over it and typed over a subsequent draft as well. Michael Depo, p. 38, lines 4-7.

Mr. Michael testified he "wasn't aware" he was supposed to keep copies of his drafts and OWW's counsel never told him of this obligation. Michael Depo, p. 38, line 15 – p. 39, line 11. Although Thermo-Ply's counsel requested the metadata for the Report, as well as OWW's counsel's copies of drafts emailed between him and Mr. Michael (Michael Depo., p. 31, line 7 – pg. 32, line 6), neither the metadata nor the drafts were ever produced. (*See*, Declaration of Richard E. Fee at paragraphs 7-8, attached hereto as Exhibit C). Mr. Michael's destruction of evidence, and OWW's complete

failure to take any steps to prevent the destruction of evidence, should not be countenanced by this court.

Striking the Report is appropriate under the circumstances. The information in the original draft of the Report cannot be reconstructed through Mr. Michael. His testimony on the Report makes this point clear. Mr. Michael testified, repeatedly, that he "thought" or "believed" he made "minor" revisions to the initial draft report supplied by OWW's counsel, but could not remember what, exactly, he revised.[3] OWW has already been given an opportunity to produce the drafts during the discovery period, but they failed to produce them.

Thermo-Ply has been prejudiced by Mr. Michael's destruction of the draft reports. The initial draft report, and the revisions to it, are the best evidence of all of the writing prepared by OWW's lawyer that contained the opinions in the final Report. Without the initial draft and its subsequent revisions, Thermo-Ply has no way to conclusively establish all portions of the Report that were prepared by OWW's counsel. In fairness to Thermo-Ply, the Report should be stricken.

## CONCLUSION

The proffered Report and testimony of OWW's purported expert, Mr. Michael should be precluded from trial. The opinions contained in that Report and other material portions of it were not prepared by Mr. Michael, but by OWW's own attorney. Thus, the opinions are not Mr. Michael's opinions and he admits he has no expertise regarding patent invalidity—the very subject of those opinions. Finally, the evidence documenting

---

[3]     Mr. Michael confirmed under oath, however, that the contents of the initial draft report remained substantially intact in the final Report. *See*, *infra*, pgs. 5 – 9.

this attempted ruse has been destroyed and is not available for use at trial to impeach Mr.

Michael.  For all these reasons, OWW should be precluded from using the Report and the

testimony of Mr. Michael at trial.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and accurate copy of the foregoing was electronically filed with the Court on this 17th day of January, 2014. Notice of this filing will be automatically sent by the Court's CM/ECF system to: **Michael Gay, Esq.**, mgay@foley.com, Foley & Lardner, LLP, 111 N. Orange Avenue, Suite 1800, P.O. Box 2193, Orlando, Florida 3282-2193; **Benjamin H. Hill, III, Esq.**, bhill@hwlaw.com, **William C. Guerrant, Jr., Esq.**, wguerrant@hwhlaw.com, **Patrick J. Risch, Esq.** prisch@hwhlaw.com, Hill Ward Henderson, 101 E. Kennedy Blvd, Suite 3700, P.O. Box 2231, Tampa, Florida 33601-2231; and **Jeffrey S. Standley, Esq.,** jstandley@standleyllp.com, **James L. Kwak, Esq.,** jkwak@standleyllp.com, **F. Michael Speed, Esq.**, mspeed@standleyllp.com, **Michael R. Stonebrook, Esq.,** mstonebrook@standleyllp.com, Standley Law Group LLP, 6300 Riverside Drive, Dublin, Ohio 43017.

  s/ Richard E. Fee
Richard E. Fee, Esq.
Florida Bar No. 813680
Kathleen M. Wade, Esq.
Florida Bar No. 127965
FEE & JEFFRIES, P.A.
1227 North Franklin Street
Tampa, Florida 33602
(813) 229-8008
(813) 229-0046 (Facsimile)
rfee@feejeffries.com
kwade@feejeffries.com

Trial Counsel for Plaintiff,
Thermo-Ply, Inc.