# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| Thermo-Ply, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 8:05-cv-779-EAK-MAP |
| ) | Judge Elizabeth A. Kovachevich |
| The Ohio Willow Wood Company, ) | Magistrate Judge Mark A. Pizzo |
| et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANT THE OHIO WILLOW WOOD COMPANY'S MEMORANDUM IN OPPOSITION TO PLAINTIFF THERMO-PLY, INC.'S MOTION IN LIMINE TO EXCLUDE EXPERT REPORT AND TESTIMONY BY JOHN MICHAEL**

Mr. John Michael ("Mr. Michael") is a qualified expert whose findings and opinions are helpful to the trier of fact. Defendant The Ohio Willow Wood Company ("OWW") respectfully submits that, having met its burden, Mr. Michael should be deemed admissible, and he should be permitted to testify in this case. Plaintiff Thermo-Ply, Inc. ("Thermo-Ply") has filed a motion in limine to exclude from consideration the expert report of Mr. Michael, as well as any testimony, argument or evidence relating to the same, at trial. OWW responds that Thermo-Ply has failed to provide legal authority or sufficient facts in support of its theories of exclusion contained in its memorandum in support.

1

## I. Mr. Michael's expert report was prepared by him and is admissible.

Thermo-Ply mischaracterizes the facts and draws incorrect conclusions regarding the authorship of Mr. Michael's expert report. Mr. Michael was not presented with a draft report "to sign and testify about" as claimed by Thermo-Ply, but was instead provided with the '617 patent, file history, relevant prior art, and a shell document from which he prepared a report of his own findings and conclusions based upon his expertise in the prosthetics and orthotics field.

As acknowledged by Thermo-Ply, the Federal Rules of Civil Procedure do not preclude an attorney from lending assistance in the preparation of the expert report. The issue is ultimately determined by ascertaining the level of the expert's involvement, who should "substantially participate in the preparation of his report." *Manning v. Crockett*, No. 95-cv-3117, 1999 WL 342715, 1999 U.S. Dist. LEXIS 7966, at *8 (N.D. Ill. May 18, 1999). *See also Solaia Tech. LLC v. ArvinMeritor, Inc.*, 361 F.Supp.2d 797 (N.D. Ill. 2005) (interpreting *Manning* to support the proposition that attorney influence on expert testimony is not per se inadmissible). The *Manning* court set forth examples of types of attorney assistance that are "clearly in tune with the concept of assisting the expert…[such as] assistance with the preparation of documents required by Rule 26, such as a list of cases in which the expert has testified, or fine-tuning a disclosure with the expert's input to ensure that it complies with the rules." *Manning*, 1999 U.S. Dist. LEXIS 7966, at *8.

In *Manning*, the court addressed an expert report that was signed by both the expert and the attorney, and that had commonalities with the complaint in that case. *Id.* at *9-11. The court declined to exclude the report in part because it could not determine who was responsible for each portion of the report. *Id.* at *10. Importantly, the court admitted the report in part because

its portions expressing the expert's opinion appeared to be original, and that he could "easily have prepared or directed the preparation of these additional portions." *Id.* at *10-11.

Going even further, the actual drafting of the report need not even be performed by the expert personally. *See Keystone Mfg. Co. v. Jaccard Corp.*, 394 F.Supp.2d 543, 568 (W.D.N.Y. 2005); *Isom v. Howmedica, Inc.*, No. 00-cv-5872, 2002 WL 1052030, 2002 U.S. Dist. LEXIS 9116, at *1-3 (N.D. Ill. May 20, 2002). In *Keystone Mfg.*, the court admitted an expert report that was not drafted by the expert. 394 F.Supp.2d at 567-568. The expert stated that "he was actively and substantially involved in the preparation of the contents of the report, and that he thoroughly read it prior to affixing his signature." *Id.* at 568. Furthermore, the court noted that the expert "ratified and confirmed that the opinions set forth in the report [were] his own expert opinions." *Id.* Admitting the expert report over the objections of the opposing party, the court also held that no evidence existed in the record that the expert was *not* substantially involved in the report's preparation. *Id.*

Thermo-Ply has the burden of proving whether the report was merely signed by the expert without substantial contribution to its preparation. *Seitz v. Envirotech Sys. Worldwide Inc.*, No. H-02-4782, 2008 U.S. Dist. LEXIS 17395, at *5 (S.D. Tex. Mar. 6, 2008) (admitting expert report where initial draft reflected the expert's opinions communicated to the drafter, and the initial draft was edited by the expert). That burden of proof has not been met here. As in *Keystone Mfg.*, Mr. Michael has confirmed and ratified that he thoroughly reviewed and agreed with the findings and opinions contained in the expert report:

> Q. Did you find [your report] to be accurate in all respects?
> A. Yes.
> Q. And factual in all respects?
> A. Yes.
> Q. And that report accurately represents your opinions?

> A. It does.
>
> Q. And those opinions are current as you sit here today?
>
> A. Yes, sir.
>
> Q. And it accurately reflects your analysis of the patents, correct?
>
> A. It does.

Dkt. No. 163-2 ("Michael Dep."), at 65:9-22, and has done so repeatedly, *e.g.*, *id.* at 41:12-20, 82:12-84:9, 223:1-5.

Furthermore, Thermo-Ply only cites to portions of Mr. Michael's report that may not have been drafted by him in totality as support of their claim that he did not "prepare" the expert report. They do not, however, mention any of the report sections that *were* drafted by Mr. Michael, nor do they mention any other examples of Mr. Michael's substantial involvement throughout the process. For example, Mr. Michael unequivocally states that he himself drafted several sections in their entirety, *e.g., id.* at 67:1-10, as well as several pages of narration related to the prior art that he considered when forming his opinions in this case, *e.g., id.* at 72:19-74:19, 76:10-14, 77:10-15, 78:4-7 and 78:21-79:1. As in *Seitz*, Mr. Michael was assisted by counsel in wording his conclusions, but not in their *formation*. *See id.* at 82:12-84:9. Similarly, the coverage of some concepts contained within the expert report, such as the definition of a person skilled in the art, while not being initially drafted by Mr. Michael, were the direct result of discussions with OWW's counsel. *Id.* at 71:4-72:6. Much of the remaining portions were edited by him, and he expressed agreement with and ultimate dominion over the entire contents of the expert report. *Id.* at 40:15-41:2.

The facts show that Mr. Michael was provided with what he described as a "shell document" prior to the preparation of his final expert report. *Id.* at 29:2-11. He testified that the shell document contained "some of the definitions I mentioned earlier [in the deposition]. All those sorts of what I would call <u>orientation information</u>." *Id.* at 30:3-8 (emphasis added). Mr.

Michael has also explained that he deleted portions of the shell document that he disagreed with, and added other portions that were not included. *E.g., id.* at 29:2-17.

Importantly, Thermo-Ply has *not* demonstrated that Mr. Michael failed to personally review the material listed as having been relied upon, that the findings, opinions or conclusions contained in the expert report are not his own, or that Mr. Michael was not substantially involved in the preparation of the report. It has not done so because it cannot – the record shows that Mr. Michael prepared and signed his expert report as required by the rules. OWW thus submits that this ground for excluding the report should be not well taken.

## II. Mr. Michael's expert report should not be excluded as a sanction because the Federal Rules of Civil Procedure do not mandate the production of drafts, and there was no spoliation or prejudice to Thermo-Ply, who made no attempts to compel production of the drafts prior to its pending motion.

Thermo-Ply also seeks the exclusion of Mr. Michael's expert report based on an alleged failure by OWW to produce a draft of the report. The only legal authority cited by Thermo-Ply in support of this theory is the Advisory Committee Notes to Rule 26(a)(2), but the Committee Notes on the most recent amendments to Rule 26 state in part:

> Rule 26(a)(2)(B)(ii) is amended to provide that disclosure include all "facts or data considered by the witness in forming" the opinions to be offered, rather than the "data or other information" disclosure prescribed in 1993. This amendment is intended to alter the outcome in cases that have relied on the 1993 formulation in requiring disclosure of all attorney-expert communications and draft reports. The amendments to Rule 26(b)(4) make this change explicit by providing work-product <u>protection against discovery regarding draft reports</u> and disclosures or attorney-expert communications.

Fed. R. Civ. P. Committee Notes on Rules—2010 Amendment. The changes to Rule 26 related to the disclosure of expert report drafts took effect on December 1, 2010 for "all proceedings thereafter commenced and, insofar as just and practicable, all proceedings then pending." *See*

5

Ex. A - Supreme Court of the United States Implementing Order of April 28, 2010, third page. *See also, e.g.*, *Skoczylas v. Fed. Bureau of Prisons*, 961 F.3d 543, 546 (5th Cir. 1992) ("…our own jurisprudence requires that, to the maximum extent possible, the amended Rules should be given retroactive application.") (internal quotations omitted). The amendments to Rule 26 that curtailed the discovery of expert report drafts became effective more than three years ago, and thus OWW's alleged "failure" to produce the draft is of no consequence in this matter.[1]

Even if OWW were to be found to have a continuing obligation to produce all expert report drafts, spoliation did not occur here. Spoliation is "the intentional destruction of evidence or the significant and meaningful alteration of a document or instrument." *Southeastern Mech. Servs. v. Brody*, 657 F.Supp.2d 1293, 1299 (M.D. Fla. 2009) (citing *Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003)). To prove spoliation, Thermo-Ply must show that: "(1) the evidence existed at one time, (2) the alleged spoliator had a duty to preserve the evidence, and (3) the evidence was crucial to the movant's prima facie case or defense." *Id.* (citing *Golden Yachts, Inc. v. Hall*, 920 So.2d 777, 781 (Fla. 4th DCA 2006)). While a draft existed at one time, any destruction of such a draft was not intentional, OWW had no duty to preserve draft reports, and it is not crucial to Thermo-Ply's case.

Under the pre-2010 version of Rule 26, there was no clear duty to preserve expert report drafts until a clear request for the drafts was made by the opposing party. *Univ. of Pittsburgh v. Townsend*, No. 3:04-cv-291, 2007 WL 1002317, 2007 U.S. Dist. LEXIS 24620, at *9-10 (E.D. Tenn. Mar. 30, 2007). Furthermore, multiple courts have approved of direct editing within an

---

[1] To the extent necessary, OWW, in light of the changes to the Federal Rules of Civil Procedure as implemented by the April 28, 2010 Order of the United States Supreme Court applicable to "all proceedings then pending", hereby lodges its objection to Thermo-Ply's request for any and all metadata, drafts, disclosures, and/or attorney-expert communications pursuant to the work-product protection afforded by FRCP 26(b)(4) and declines to provide any such material to Thermo-Ply, unless so ordered by this Court.

electronic document by an expert – a common procedure – and have held that there is no duty to *create* drafts. *E.g.*, *Teleglobe USA, Inc. v. BCE Inc. (In re Teleglobe Commcn.'s Corp.)*, 392 B.R. 561, 573 (Bankr. D. Del. 2008); *Wechsler v. Hunt Health Sys.*, No. 04-cv-5032, U.S. Dist. LEXIS 2589, at *16-17 (S.D.N.Y. Feb. 24, 2003). Thermo-Ply's allegations that Mr. Michael "destroyed the initial report sent to him by OWW's counsel by typing over it and typ[ing] over a subsequent draft as well" are mischaracterizations of the facts in direct conflict with the case law. Therefore, because no duty to preserve the evidence existed, any failure by OWW to do so or to instruct Mr. Michael to do so is of no consequence.

Thermo-Ply claims to be prejudiced by not receiving a copy of the initial shell document, explaining that it is unable to conclusively establish the origin of all portions of the report. Dkt. No. 163, at 13. That draft, however, cannot be characterized as "crucial" evidence as required by *Southeastern Mech.*, because the ample evidence of record pointed out in detail above shows that Mr. Michael did in fact "prepare" his expert report. Thus, the contents of the draft would be cumulative at best. *See also Sandata Techs., Inc. v. Infocrossing, Inc.*, No. 05-cv-9546, 2007 U.S. Dist. LEXIS 85176 (S.D.N.Y. Nov. 16, 2007) (obligation to preserve is not even entirely clear, and expert notes sought were not "critical evidence" relevant to the party's claim or defense).

Furthermore, Thermo-Ply is also not prejudiced because it may readily determine the basis of the expert's opinion – and the proper weight to be afforded to it – during examination and cross-examination at trial. *See McDonald v. Sun Oil Co.*, 423 F.Supp.2d 1114, 1123 (D. Or. 2006) ("[T]he central inquiry on cross-examination of an expert 'is not the question of if and to what extent the expert was influenced by counsel,' but instead asks for the basis of the expert's opinion.") (subsequently *rev'd* on other grounds) (quoting *Nexxus Prods. Co. v. CVS New York,*

*Inc.*, 188 F.R.D. 7, 10 (D. Mass. 1999)). The *Teleglobe* court approved of this proposition, finding that the party requesting sanctions was not prejudiced because the expert at issue was deposed, stating that "cross-examination of the expert can be comprehensive and effective on the relevant issue of the basis for an expert's opinion without an inquiry into the lawyer's role in assisting with the formulation of the theory." 392 B.R. at 581 (quoting *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 595 (3d Cir. 1984)). Here, Thermo-Ply was afforded sufficient opportunity to determine the basis of Mr. Michael's opinions at his deposition in April 2007.

Finally, Thermo-Ply can hardly claim to be prejudiced when, after discovering its apparent existence, it never attempted to request the draft in writing, nor did it seek to compel its disclosure at any time during the last six-plus years. *See Kendall lakes Towers Condo. Ass'n v. Pac. Ins. Co.*, No. 10-cv-24310, 2011 WL 6190160, 2011 U.S. Dist. LEXIS 138953, *2-3 (S.D. Fla. Dec. 2, 2011) (calling "unusual" a party's decision to bypass a motion to compel to bring discovery failures to the court's attention).

## III. Mr. Michael's expert reports, testimony and opinion evidence as to the application of the prior art to the '617 patent claims are admissible.

Thermo-Ply correctly states the general rule regarding the admissibility of expert testimony in this jurisdiction as set forth in *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004), which will not be restated here. Dkt. No. 163, at 10. For the reasons set forth below, OWW respectfully submits that Mr. Michael's testimony and expert reports are admissible.

### A. As a licensed and ABC certified Prosthetist-Orthotist, Mr. Michael is fully qualified to offer competent, expert testimony and opinion evidence as to the applicability of the prior art to the '617 patent, its meaning to persons skilled in the relevant art.

Mr. Michael's recognized status, credentials and extensive experience as a licensed and certified Prosthetist-Orthotist qualify him to offer expert testimony and opinions in this case as to

applicability of the prior art to the claims of the '617 patent, or to assist in understanding of the prior art by the trier of fact by explaining the technical aspects thereof. Thermo-Ply argues that Mr. Michael is not qualified to render opinions regarding patent invalidity, and that it follows that his entire report should be deemed inadmissible and he should be precluded from testifying at trial. While Mr. Michael may not properly testify to opinions as to legal conclusions that are ultimately within the province of the trial court, the basis for his testimony remains admissible.

The ultimate determination as to the admissibility of expert testimony is within the sound discretion of the district court, "which is accorded 'considerable leeway' in making its determination." *Medtronic Xomed, Inc. v. Gyrus ENT LLC*, 440 F.Supp.2d 1338, 1340 (M.D. Fla. 2006) (quoting *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005)); *U.S. v. Frazier*, 387 F.3d at 1258-1259. Any combination of "knowledge, skill, experience, training, or education" may form the basis for qualifying a witness as an expert. *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, No. 09-cv-61490, 2011 U.S. Dist. LEXIS 62969, at *7 (S.D. Fla. Jun. 8, 2011) (quoting FED. R. EVID. 702.). The standard for qualification of an expert "is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *Id.* at *22 (quoting *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F.Supp.2d 1321, 1325 (S.D. Fla. 2009)). *See also Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, No. 04-cv-7369, 2006 U.S. Dist. LEXIS, at *15 (S.D.N.Y. July 28, 2006) ("An expert should not be required to satisfy an overly narrow test of his own qualifications.") (citations omitted). In making the qualification determination, the trial court is required to "examine the credentials of the proposed expert in light of the subject matter of the proposed testimony." *Wyeth v. Apotex Inc.*, No. 08-cv-22308, 2009 U.S. Dist. LEXIS 132019, at *9-10

(S.D. Fla. Oct. 6, 2009) (citing *Calta v. North Am. Arms, Inc.*, No. 8:05-cv-1266, 2007 U.S. Dist. LEXIS 96116, 2007 WL 4800641, at *5 (M.D. Fla. Nov. 27, 2007)). *See also In re. Zyprexa Prods. Liab. Litig.*, 489 F.Supp.2d 230, 282 (E.D.N.Y. 2007) ("If the expert has educational and experiential qualifications in a general field *closely related to the subject matter in question*, the court will not exclude testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent.") (emphasis added); *Sullivan v. Ford Moto Co.*, No. 97-CV593, (S.D.N.Y. Mar. 31, 2000) ("One knowledgeable about a particular subject need not be precisely informed about all details of the issues raised in order to offer an opinion") (quotations omitted).

OWW submits that the subject matter of Mr. Michael's proposed testimony is directed to the operation and applicability of the art in the field of prosthetics and orthotics, and the connection between elements claimed in the '617 patent and elements found in prior art devices. As of 2007, the year of Mr. Michael's deposition, he had worked in the prosthetics and orthotics industry for roughly 30 years. Expert Report, Dkt. No. 163-1, pgs. 21-23; Michael Dep., Dkt. No. 163-2, at 104:22-105:5. He has practiced as a clinician, educator, and consultant in a variety of private sector and university settings throughout this time period. Expert Report, Dkt. No. 163-1, pgs. 21-40. He is a widely published author of scholarly works, has lectured both in the United States and abroad, and has received several industry awards, including the Outstanding Clinician Award and the Distinguished Practitioner Award from the American Academy of Orthotists & Prosthetists. *Id.* He has served as President of the Academy, and also as Chair Emeritus of US-ISPO, having been designated as a Fellow of both organizations. *Id.*

As a person having extensive skill in the art, Mr. Michael is especially qualified to interpret the written descriptions found in the specification of Thermo-Ply's '617 patent and

other references in the field. *See* Michael Dep., Dkt. No. 163-2, at 103:23-105:5. He has provided his expert services in other patent cases in aid of claim construction and infringement analysis. *Id.* at 56:8-59:15. Mr. Michael clearly has no problem with, and is well-qualified to, compare patent claims, disclosures and products in the prosthetics and orthotics field. He is not required to be an expert on invalidity to qualify as an expert in this case, and for Thermo-Ply to suggest otherwise is incorrect.

> **B. Mr. Michael's testimony and application of his scientific, technical and specialized expertise is helpful to the trier of fact in understanding the evidence and determining the facts.**

As addressed above, Mr. Michael is a notable and well-credentialed expert in the field of fiber sciences and textile engineering. Michael Dep., Dkt. No. 163-1, at 104:22-105:5. To resolve OWW's claims of invalidity in this case, the trier of fact will be required to compare technical prior art references and products to the claims of the '617 patent. Mr. Michael's expert knowledge and expertise in the field of prosthetics and orthotics will be helpful in assisting the fact finder to reach the ultimate issue of invalidity. Again, Thermo-Ply focuses on the fact that Mr. Michael is admittedly not an expert in patent law without addressing Mr. Michael's extensive background in the field <u>directly</u> related to the technology at issue. As an exemplary person skilled in the art, Mr. Michael will surely be helpful to the average lay person, who will be more readily able to understand the technology at issue here with the aid of Mr. Michael's expert testimony.

## IV. Should the Court have any concerns about Mr. Michael's qualifications or methodologies, the Court should hold a *Daubert* hearing.

In the event that this Court is concerned by any of the objections that Thermo-Ply raised to Mr. Michael's testimony, OWW requests that the Court hold a *Daubert* hearing to assess his qualifications and methodology to determine if his opinions are admissible. While *Daubert*

hearings are not mandatory, OWW respectfully submits that it would be appropriate in light of Mr. Michael's extensive qualifications and experience in the field of prosthetics and orthotics.

## V. Conclusion

Thermo-Ply's Motion in Limine attempts to cloud the fact that Mr. Michael's report was prepared by him and reflects his opinions and conclusions. Mr. Michael is qualified as an expert and as such, his testimony is admissible and will be helpful to the fact finder. Furthermore, Thermo-Ply's asserted grounds for the exclusion of Mr. Michael's expert report and the preclusion of his testimony at trial offers sparse legal authority in support of its motion. Therefore, OWW respectfully requests that Thermo-Ply's motion be denied.

Respectfully submitted,

/s/ Jeffrey S. Standley
Jeffrey S. Standley
F. Michael Speed, Jr.
Michael Stonebrook
STANDLEY LAW GROUP LLP
6300 Riverside Drive
Dublin, OH 43017
Tel: (614) 792-5555; Fax: (614) 792-5536
jstandley@standleyllp.com
mspeed@standleyllp.com
mstonebrook@standleyllp.com

Benjamin H. Hill, III (Florida Bar #094585)
William C. Guerrant, Jr. (Florida Bar #516058)
Patrick J. Risch (Florida Bar #0165603)
HILL, WARD, & HENDERSON, P.A.
101 East Kennedy Blvd., Suite 3700
Tampa, FL 33601-2231
Tel.: (813) 221-3900
Fax.: (813) 221-2900
bhill@hwhlaw.com
wguerrant@hwhlaw.com
prisch@hwhlaw.com

Attorneys for Defendant,
The Ohio Willow Wood Company

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of February, 2014, a true and accurate copy of the foregoing was electronically filed with the Court.  Notice of this filing will be automatically sent by the Court's CM/ECF system.

      /s/ Michael Stonebrook
     Michael Stonebrook