**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | | |
|---|---|---|
| Thermo-Ply, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| The Ohio Willow Wood Company, | ) | Case No. 8:05-cv-779-EAK-MAP |
| Silipos, Inc., | ) | Judge Elizabeth A. Kovachevich |
| Southern Prosthetic Supply, Inc., | ) | Magistrate Judge Mark A. Pizzo |
| Hanger Prosthetics & Orthotics, Inc., | ) | |
| and Seattle Systems, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT THE OHIO WILLOW WOOD COMPANY'S MEMORANDUM IN
OPPOSITION TO PLAINTIFF THERMO-PLY, INC.'S MOTION IN LIMINE TO
PRECLUDE THE TRIAL TESTIMONY OF WAYNE DALY**

The law permits reasonable compensation for a fact witness. OWW's compensation of Wayne Daly ("Mr. Daly"), a fact witness in this case, falls well within the limits of what is permissible. There is no reason why Mr. Daly, an individual with personal knowledge of the prior art pertaining to Thermo-Ply's patent, should not be permitted to testify in this case. Thermo-Ply's Motion in Limine which seeks to preclude Mr. Daly's testimony, presents an inaccurate and unsupported version of the facts that should be rejected by the Court. For the reasons that follow, Thermo-Ply's Motion in Limine should be denied.

## I.    The Relevant Facts

Wayne Daly, is a Certified Prosthetist Orthotist ("CPO") who has been practicing in the field of prosthetics and orthotics since approximately 1977. *See* October 10, 2006 Deposition of

1

Wayne K. Daly, attached as Exhibit A, at pp. 1 – 9. In 2006, Mr. Daly was one of five CPO's employed by the Center for Prosthetics and Orthotics located in Seattle, Washington. *See Id*. at pp. 1 – 9, 15. Mr. Daly is a fellow of The Academy (the professional educational organization within the CPO field), has served as its regional president, and is additionally a member of The Academy's Upper Limb Society. *Id.* at pp. 9 – 10. Mr. Daly is on the clinical faculty at the University of Washington's Prosthetics and Orthotics Department where he teaches rehabilitation medicine to physicians and students. *Id.* at p. 18.

Based on his expertise and qualifications, Mr. Daly was retained as an expert witness by OWW in Case No. 2:04-cv-1223 captioned *The Ohio Willow Wood Comp. v. Alps South Corp.* and in Case No. 2:04-cv-1222 captioned *The Ohio Willow Wood Comp. v. DAW Industries, Inc* both of which were filed by OWW in The United States District Court for the Southern District of Ohio Eastern Division. In those cases, Mr. Daly provided an opinion as to whether United States Patent No. 5,830,237 was being infringed by Alps and DAW respectively. OWW compensated Mr. Daly at a rate of $180 – $200 per hour in connection with his expert services rendered in those cases and paid Mr. Daly a total of $4,198.84 for both cases. *See* Dkt. No. 162-3 at p. 13; February 3, 2014 Declaration of Wayne Daly attached as Exhibit B. Mr. Daly was deposed only once as an expert witness for OWW: in association with Case No. 2:04-cv-1223.

In working with Mr. Daly, OWW learned that he had knowledge of facts relevant to this case. Specifically, OWW learned that Mr. Daly's occupation regularly included the fabrication and/or modification of prosthetic devices, including prosthetic liners, for his patients. In the 1995 – 1996 timeframe, Mr. Daly began treating a patient who had lost the lower part of an arm to a traumatic amputation. Ex. A at pp. 27 – 39. Because the patient had a neuroma[1] at the end of his amputated limb, he was quite sensitive to the negative pressure that can be created when a

---

[1] A neuroma is a growth or tumor of nerve tissue. *See* http://en.wikipedia.org/wiki/Neuroma.

prosthetic liner stretches under the weight of a prosthetic limb.  *See* Ex. A at p. 39.  To treat this patient, Mr. Daly modified an Ohio Willow Wood Alpha Liner with strips of Dacron tape (adhered to the Alpha Liner with Shoe-Goo adhesive) designed to prevent stretch of the liner in the longitudinal direction while permitting the liner to stretch circumferentially (hereinafter referred to as the "Daly Liner").  Ex. A at pp. 30 – 34.  The Daly Liner was fabricated and provided to the patient in the March to April of 1998 timeframe, but was ultimately returned by the patient to Mr. Daly when the patient discontinued its use.  The following is a photograph of the Daly Liner:



Mr. Daly's testimony regarding the Daly Liner is corroborated by, amongst other things, a CPO Progress Report for the patient dated 3-31-1998 that provides:

> Pt dropped arm off for modification to shorten ¾" lower profile electrodes **add reinforcement strips to Alpha to end pulling**…

*See* CPO Progress Report attached as Exhibit C. Mr. Daly additionally has slides he made using photographs of the Daly liner. The slides are dated May, 1998. *See* Exhibit D. The Daly Liner is prior art to United States Patent No. 6,231,617 and could result in its invalidation at trial.

In this case, OWW has compensated Mr. Daly a total of $3,941.88. $835.94 of this amount was to reimburse Mr. Daly for out of pocket expenses he incurred as a result of the case. The remaining payments were to compensate Mr. Daly for lost salary incurred as a result of his participation with this case. The precise breakdown of OWW's payments to Mr. Daly in this matter is as follows:

| **Date** | **Amount** | **Reason for Payment** |
|---|---|---|
| 12/19/2005 | $18.73 | Postage Reimbursement |
| 10/9/2006 | $256.16 | Meeting with Attorney |
| 10/9/2006 | $2.25 | Parking Reimbursement |
| 10/10/2006 | $768.48 | Attended Deposition |
| 10/10/2006 | $18.00 | Parking Reimbursement |
| 10/11/2006 | $32.02 | Deposition Review |
| 10/17/2006 | $4.05 | Postage Reimbursement |
| 10/22/2006 | $14.40 | Postage Reimbursement |
| 10/4/2007 | $1,024.64 | Travel to attend Deposition |
| 10/5/2007 | $1,024.64 | Attended Deposition |
| 10/5/2007 | $744.71 | Reimbursement for out-of-pocket travel expenses to attend 10/4 – 10/5 Deposition |
| 12/27/2007 | $33.80 | Postage Reimbursement |

Case 8:05-cv-00779-EAK-MAP   Document 173   Filed 02/03/14   Page 5 of 17 PageID 2413

*See* Ex. B.  In any instance where Mr. Daly was being compensated for his time in association with this case (for example when he missed work to attend depositions), he was paid by OWW at a rate of $128.08 per hour.  *Id.*  These payments were made to compensate Mr. Daly for lost wages as a result of spending time on this case.  Dkt. No. 162-3 at pp. 13 – 14; Ex. B.  OWW has not provided Mr. Daly with any payments other than those disclosed herein and has not made any payments to Mr. Daly since March of 2008.  Ex. B.

Thermo-Ply asserts that "OWW paid Mr. Daly more than three (3) times his normal hourly rate" when it compensated him at $128.08 an hour for Mr. Daly's lost salary time. Dkt. No. 162 at p. 5.  To make this allegation, Thermo-Ply assumes that Mr. Daly's salary is based on a 40-hour work week and 52 weeks a year.  *Id.*  However, the facts establish that this is not an accurate method for determining the true cost of an hour of Mr. Daly's time during the relevant time period.  At the time of the accused compensations, Mr. Daly was not an hourly employee. *See* October 5, 2007 Deposition of Wayne Daly, attached as Exhibit H, at pp. 80 – 81.  Rather, Mr. Daly's salary fluctuated.  *Id.*  In 2006, Mr. Daly was seeing – in an average week – anywhere from six to eight prosthetic patients.  *See* Ex. A at pp. 19, 14 (Mr. Daly indicated that prosthetics was approximately 60 percent of his job, while orthotics was the remaining 40 percent).  Mr. Daly's primary job function at the time was seeing patients.  Ex. A at p. 13.  Mr. Daly's compensation was not based on a 40 hour work week.  In the 2006 – 2007 timeframe, Mr. Daly's employer indicated to him that an appropriate estimate for an hour of Mr. Daly's time was $200.  Ex. B.  Mr. Daly did not receive pay from his employer for the time he spent on this case.  Ex. A at pp. 127 – 129.

OWW has never compensated or offered to compensate Mr. Daly through the provision of a weekend trip/vacation of Mr. Daly's choosing and Thermo-Ply's allegation to the contrary is

5

reliant on fiction rather than the facts of this case.  Specifically, Thermo-Ply attempts to tie together two entirely unrelated emails – one from July of 2006 and the second from August of 2007 – to create an untrue characterization of what has transpired in this case in the scheduling Mr. Daly's depositions.  The facts establish that OWW and Thermo-Ply had agreed and scheduled to conduct Mr. Daly's first deposition in this case in Seattle, Washington (where Mr. Daly lives) on July 18, 2006 when it was cancelled at the last minute – for the second time – by Thermo-Ply's counsel.  Dkt. No. 162-5.  OWW's attorney emailed Mr. Daly on July 14, 2006 to let him know that the deposition would not take place and acknowledged the inconvenience.  *Id.*  It was expected that Mr. Daly had not scheduled to see any patients on the 18th in order to do the deposition and therefore, he would not be able to fill that day with patients with such short notice that he could now do so.  *See id.*  The attorney offered that Mr. Daly could have his deposition taken at a location other than Seattle when it was rescheduled – in order to make it as convenient as possible, considering his deposition had already been postponed twice, through no fault of Mr. Daly.  *See id*; February 3, 2014 Deposition of Eric Gayan hereby attached as Exhibit I; Ex. B.  OWW offered to pay for Mr. Daly's travel, but it did not offer to pay for other expenses.  *Id.*  Mr. Daly clearly understood the exchange as an offer of convenience and not an offer of a trip of his choosing: the facts establish that Mr. Daly's deposition was ultimately rescheduled and taken in Seattle, Washington on October 6, 2006.  *See* Ex. A; Ex. B; Ex. I.  Mr. Daly resided near Seattle at the time.

Thermo-Ply's Motion in Limine points to a subsequent and completely unrelated email exchange to argue that OWW paid for Mr. Daly's testimony with a trip to Columbus, Ohio to attend CPO classes in the city.  Specifically, Mr. Daly sent OWW's counsel an email on August 29, 2007 (almost a year after his first deposition in the case had already been taken in Seattle)

indicating he might have dates on which he could be available in Columbus, Ohio to provide a second deposition in the case because there was a class he wanted to take that was being offered in the city on October 18 – 20 and November 15 – 17, 2007. Dkt. No. 162-6. There is no evidence that this email from Mr. Daly was prompted by or was in response to an offer from OWW to pay for the trip. In any event, OWW's attorney informed Mr. Daly that the dates he had proposed were not workable with the litigation schedule of the case. *See* Dkt. No. 162-6. OWW requested that Mr. Daly's second deposition be scheduled and conducted on October 5, 2007 in Columbus, Ohio which is when and where the deposition ultimately took place. *See id.* OWW reasonably reimbursed Mr. Daly for his out-of-pocket expenses incurred in attending the deposition in Columbus and paid him for his corresponding lost wages. Mr. Daly received no benefit from traveling to Columbus, Ohio, where OWW and its counsel are located, to have his second deposition taken in this case. Thermo-Ply's attempt to tie Mr. Daly's email from August of 2007, pertaining to his second deposition in this case, to an email from July of 2006, in which OWW was simply trying to make the third attempt at scheduling Mr. Daly's first deposition as convenient as possible, is not supported.

Nor has OWW paid Mr. Daly through gifts of free liners. Ohio Willow Wood regularly gives liners away at no monetary cost to CPO's such as Wayne Daly. February 3, 2014 Declaration of James Colvin hereby attached as Exhibit E. There are a variety of reasons the company does this including to assist OWW with its development efforts and to permit CPO's to try out new/special designs for special patient cases. *Id.* In each instance, OWW typically receives valuable feedback on its products in return for the liners. *Id.* Mr. Daly's records pertaining to the "free" liners he received from OWW (records which were provided by Mr. Daly to Thermo-Ply's counsel at Mr. Daly's 2007 deposition in this case) indicate that liners were sent

to Mr. Daly by OWW at least as early as November 21, 2000.  *See* John Hays Letter of November 21, 2000 attached as Exhibit F.  Given that OWW was not involved in litigation pertaining to its liners prior to 2004 and OWW was not sued by Thermo-Ply in this matter until April of 2005, Thermo-Ply's contention that the liners were given by OWW to Mr. Daly as a form of compensation for his testimony is not supportable.  Mr. Daly estimates that over the years he has received approximately 10 to 20 liners from OWW to test/evaluate/utilize in special patient cases.  Ex. A at pp. 94 – 96 and errata; *See* Ex. B.  Correspondence between OWW and Mr. Daly pertaining to the liners, which is collectively attached hereto as Exhibit G, includes a variety of Test Patient Agreement forms and feedback from Mr. Daly to OWW on the liners and supports Mr. Daly's testimony that these liners were provided by OWW to Mr. Daly for valid purposes such as for evaluation and *not* as a payment to Mr. Daly for his testimony in this or any other case.  *See* Ex. A at pp. 94 – 96; Ex. G.  The correspondence also establishes that the liners were sent to Mr. Daly by OWW and not offered by counsel.  *See* Ex. G.

      Without citing to any rules of professional conduct/responsibility or any particular laws that apply to the CPO profession, Thermo-Ply asserts that "Mr. Daly charged his patients and was reimbursed for [the] free liners through Medicaid" "in a clear violation of professional ethics".  *See* Dkt. No. 162 at pp. 6, 3.  But, Mr. Daly explained that the liners sent to him by OWW were utilized by himself as well as other CPO's within his organization for treating patients. Ex. H at p. 83, l. 11 – p. 84, l. 17.  Mr. Daly testified that only some of the liners were sold and that any payments realized through the sale of those liners went to Mr. Daly's employer. Ex. H at p. 83, l. 11 – p. 84, l. 17; Ex. H at pp. 81 – 82.  Further: 1) Mr. Daly and the other CPO's with whom he worked were providing OWW with valuable feedback on the liners, a process which required the time and energy of the CPOs; and 2) the prosthetic liners were

provided to patients under a guarantee whereby Mr. Daly's employer was responsible for replacing the products with a new or different product if the amputee experienced problems with the liners. Ex. B. Both of these facts justified obtaining payment for the liners.

Thermo-Ply cannot dispute that it obtained the relevant information pertaining to Mr. Daly early in this case and that Thermo-Ply has been able to conduct discovery accordingly. This is not a case where information regarding Mr. Daly was withheld from Thermo-Ply or where there has been any attempt to conceal information pertaining to Mr. Daly's compensation.

## II.     Mr. Daly's Relevant Testimony Should not be Stricken from Trial

Ohio Willow Wood and its counsel are aware of the limitations placed on the compensation that may be paid to a fact witness by both federal law and the rules of professional ethics. Thermo-Ply is wrong in its assertion that Mr. Daly has been compensated by OWW or its counsel in a way that would give this Court a reason to strike his testimony from the trial of this case. Section (d) of 18 U.S.C. § 201 specifically excludes certain types of witness compensation from those that are deemed to be unlawful/inappropriate. Specifically, the section provides:

> [paragraph 3 of subsection (c)] shall not be construed to prohibit the payment or receipt of witness fees provided by law, or the payment, by the party upon whose behalf a witness is called and receipt by a witness, of the reasonable cost of travel and subsistence incurred and the **reasonable value of time lost in attendance at any such trial, hearing, or proceeding, or in the case of expert witnesses, a reasonable fee for time spent in the preparation of such opinion and in appearing and testifying.**

Rule 4-3.4 (b) of the Florida Rules of Professional Conduct, titled "Fairness to Opposing Party and Counsel," provides that a lawyer shall not:

> offer an inducement to a witness, **except a lawyer may pay a witness reasonable expenses incurred by the witness in attending or testifying at proceedings**; a reasonable, noncontingent fee for professional services of an expert witness; **and**

9

> **reasonable compensation to reimburse a witness for the loss of compensation incurred by reason of preparing for, attending, or testifying at proceedings.**

Accordingly, both of the bases cited to by Thermo-Ply for striking Mr. Daly's testimony from this case permit for fact witnesses to be reasonably reimbursed for costs and for time lost in attending depositions, trial, etc.

### A.    Within the 11th Circuit a Violation of 18 U.S.C. § 201(c) requires evidence that the elicited testimony be false and there is no such evidence in this case

As explained by the Court in *Golden Door Jewelry Creations v. Lloyds Underwriters Non-Marine Ass'n*, 865 F.Supp. 1516 (S.D. Fla. 1994), 18 U.S.C. § 201(c) makes it a crime to pay a witness to provide *false* testimony. *See id.* at 1524 (Section 201(c) was not violated despite fact witnesses having been paid hundreds of thousands of dollars in association with the case because there was no evidence that the testimony elicited through the monetary inducements was false). Not once does Thermo-Ply's Motion in Limine allege that OWW has paid Mr. Daly for false testimony or that the testimony provided by Mr. Daly has been false. *See* Dkt. No. 162. Accordingly, 18 U.S.C. § 201(c) provides no basis for this Court to strike Mr. Daly from testifying at trial.

### B.    Within the 11th Circuit State Ethic Rules are not Grounds for the Suppression of Evidence in Federal Court

Nor do the Florida Rules of Professional Responsibility provide this Court with a basis for suppressing the testimony of Mr. Daly. As explained in *United States v. Lowery*, 166 F.3d 1119 (11th Cir. 1999), despite the state's interest in the regulation of attorneys practicing within its borders, there is a competing federal interest in the enforcement of federal civil laws and therefore "a state rule of professional conduct cannot provide an adequate basis for a federal

court to suppress evidence that is otherwise admissible." *Id.* at 1124. Issues pertaining to the admissibility of evidence are governed by the law of the regional circuit. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1356 (Fed. Cir. 2013). Thermo-Ply's request that this Court utilize a Florida Rule of Professional Responsibility to strike the relevant testimony of Mr. Daly is without merit.

### C. OWW's Reimbursement of Mr. Daly is Permitted by Law and by the Rules of Professional Conduct

Furthermore, 18 U.S.C. § 201(c) and Rule 4-3.4(b) of the Florida Rules of Professional Responsibility both permit for the type of compensation that OWW has provided to Mr. Daly. OWW has reimbursed Mr. Daly a total of $3,941.88 in association with this case all of which was provided to Mr. Daly for permissible reasons: either to reimburse him for lost compensation or to reimburse him for out of pocket expenses associated with this case (specifically postage, travel, and parking). The rate of $128.08 an hour that was paid by OWW to Mr. Daly for his loss of compensation is reasonable in light of all the facts. *See Smith v. Pfizer*, *Inc.*, 714 F. Supp. 2d 845, 853 – 853 (M.D. Tenn. 2010)( the compensation of a fact witness at the rate of $500 an hour was not improper because that was the usual consulting fee of the witness); *Centennial Mgmt. Servs. V. Axa Re Vie*, 193 F.R.D. 671 (D. Kann. 2000)(payments to a fact witness in excess of $40,000 were not a violation of federal law or of the professional rules of conduct when there was no evidence suggesting that the compensation was not for the time the witness spent on the case and the rates of compensation – which ranged from $125 to $200 per hour – were reasonable in light of the witness's years of experience in the relevant industry); Formal Opinion 96-402 of the American Bar Association Standing Committee on Ethics and Professional Responsibility (opining that there is no need to draw a distinction between

11

compensation provided to a fact witness for time spent in actually attending a deposition and time spent in pretrial interviews with a lawyer, etc.).

And there is simply no merit to Thermo-Ply's allegations that Mr. Daly was improperly paid by OWW with travel or free prosthetic liners. Emails proffered by Thermo-Ply to establish wrongdoing on OWW's behalf show that OWW was merely attempting to make the provision of testimony in this case as convenient as possible for Mr. Daly whose schedule had already been rearranged multiple times due to cancellations by counsel. Further, OWW never sent Mr. Daly on a "trip of his choosing." Mr. Daly's first deposition in this case, which occurred in 2006, was rescheduled and taken in Mr. Daly's hometown of Seattle Washington. Mr. Daly's second deposition, which occurred in 2007, was taken in Columbus, Ohio at OWW's request on a date that did not coincide with classes Mr. Daly was planning on taking in the city. There was no improper conduct associated with these depositions whatsoever. Similarly, as for the prosthetic liners provided by OWW to Mr. Daly, the facts do not support a finding that they have any connection whatsoever to this case or the testimony that Mr. Daly has provided. Prosthetic liners are regularly provided by OWW to CPO's in exchange for valuable feed-back on the products and that is precisely why OWW provided between 10 and 20 liners to Mr. Daly and his employer beginning in 2000: a time well in advance of OWW's being involved in patent litigation. The benign nature of the liners is reinforced by the correspondence exchanged between OWW and Mr. Daly which shows the valuable feedback Mr. Daly was giving OWW on the products. Ex. G. There is no support for Thermo-Ply's allegation that OWW has paid for Mr. Daly's testimony through prosthetic liners.

To the extent that Thermo-Ply's motion in limine takes issue with the fact that Mr. Daly has served as an expert witness for OWW in other cases, that is no basis for preventing Mr. Daly

from offering testimony as a fact witness in this case. The Federal Rules of Evidence do not distinguish between fact witnesses and expert witnesses, but rather between expert and lay testimony. Fed. R. Evid. 701, advisory committee notes. Individuals who have been retained as experts may provide both expert and fact testimony in a single case or, because they have been disqualified as an expert, may in some cases be qualified to testify instead as a fact witness. *See Thomas & Betts Corp. v. Richards Mfg. Co.*, 2006 U.S. Dist. LEXIS 16636, *34-37 (D.N.J. Apr. 3, 2006)(Three individuals retained as experts were not permitted to offer expert testimony, but could offer lay testimony at trial as to certain areas to which they had personal knowledge); *Lamoureux v. AnazaoHealth Corp.*, 2009 U.S. Dist. LEXIS 37089 *9 - *23 (D. Conn. Apr. 30, 2009)(individual was permitted to offer expert testimony on the issue of patent infringement and was also permitted to testify in the case as a fact witness "about matters of which he [had] personal knowledge"). The fact that Mr. Daly has provided expert testimony in other cases for OWW does not disqualify him as serving as a lay witness in this case.[2]

      This case is easily distinguished from those in which the compensation provided to a fact witness has been found to be excessive. *See Golden Door Jewelry Creations*, 865 F. Supp. 1516 (hundreds of thousands of dollars were paid to fact witnesses for their testimony in violation of the Florida Professional Rules of Conduct. There was no indication that the payments were made to compensate for lost salary); *U.S. v. Cinergy Corp.*, 2008 WL 7679914 (S.D. Ind. Dec. 18, 2008)(opining that $200 per hour was beyond the reasonable value of time lost for a person purporting to be retired). And is further distinguished from Case No. C2-04-1223 captioned *The Ohio Willow Wood Company v. Alps South, LLC*, where OWW moved to strike the Declaration

---

[2] Because the Federal Rules do not distinguish between expert and lay witnesses but rather distinguish between expert and lay testimony, Thermo-Ply's allegations that Mr. Daly was confused as to whether he is serving as an expert or lay witness in this case are irrelevant. But, Thermo-Ply has not even attempted to support its allegations pertaining to Mr. Daly's purported confusion in this case with evidence. *See* Dkt. No. 162 at pp. 2, 6.

and Affidavit of Robert S. Gailey and to preclude him from testifying at trial.  In that case, as was the case in *U.S. v. Cinergy Corp.*, 2008 WL 7679914, there was a lack of disclosure regarding the compensation that had been provided to the fact witness.   Further, the payments made to Mr. Gailey were <u>not</u> reimbursement for the loss of compensation incurred by reason of his preparing for, attending, or testifying at proceedings.  The fact that OWW moved to strike the testimony of Mr. Gailey does not provide any reason for this Court to preclude the relevant testimony of Mr. Daly who has been compensated by OWW within the parameters provided by 18 U.S.C. § 201(c) and Rule 4-3.4(b) of the Florida Rules of Professional Responsibility.

Mr. Daly has personal knowledge of prior art that is highly relevant to OWW's claim that the patent asserted by Thermo-Ply in this case is invalid.  Federal Rule of Evidence 402 provides:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority.

*See United States v. Lowery*, 166 F.3d 1119, 1125 (11th Cir. Fla. 1999) (The United States Court of Appeals for the Eleventh Circuit has opined that Rule 402 provides an exclusive list of the sources of authority for exclusion of evidence in federal court and "state rules of professional conduct are not included in the list.").  Thermo-Ply's Motion in Limine does an injustice to the facts of this case in an attempt to convince the Court that OWW and its counsel have proceeded improperly when they have in fact been very cognizant and respectful of the limitations that are placed on the compensation of fact witnesses.  To the extent Thermo-Ply alleges otherwise, this is an issue to be addressed at trial through cross-examination and not by the Court through the exclusion of Mr. Daly's testimony.  *See Platypus Wear Inc. v. Horizonte Fabricacao Distribuicao Importacao E Exportacao LTDA*, Case No. 08-20738, 2010 U.S. Dist. LEXIS

13472 (S.D. Fla. Jan. 8, 2010)(when there was nothing in the record suggesting that the witnesses had fabricated documents or testimony, cross-examination at trial was the proper method of dealing with an allegation that the witnesses had been improperly compensated under Florida Rule 4-3.4(b); *Caldwell v. Cablevision*, No. 00783 Slip. Op. at 2 (N.Y. Feb. 7, 2013) (providing the jury with a general bias charge was an appropriate method of handling the compensation of the fact witness).   There is no justification for granting Thermo-Ply's Motion in Limine.

## III.   Conclusion

Neither OWW nor its counsel have compensated or offered to compensate Mr. Daly, a lay witness in this case, in a way that runs afoul of either 18 U.S.C. § 201(c) or Rule 4-3.4(b) of the Florida Rules of Professional Responsibility. Thermo-Ply's Motion in Limine is wrong on the facts and is wrong on the law and OWW respectfully requests that it be denied.

Respectfully submitted,

/s/ Jeffrey S. Standley
Jeffrey S. Standley
F. Michael Speed, Jr.
Michael Stonebrook
STANDLEY LAW GROUP LLP
6300 Riverside Drive
Dublin, OH  43017
Tel:  (614) 792-5555; Fax:  (614) 792-5536
jstandley@standleyllp.com
mspeed@standleyllp.com
mstonebrook@standleyllp.com

Benjamin H. Hill, III (Florida Bar #094585)
William C. Guerrant, Jr. (Florida Bar #516058)
Patrick J. Risch (Florida Bar #0165603)
HILL, WARD, & HENDERSON, P.A.
101 East Kennedy Blvd., Suite 3700

        Tampa, FL 33601-2231
        Tel.:  (813) 221-3900
        Fax.:  (813) 221-2900
        bhill@hwhlaw.com
        wguerrant@hwhlaw.com
        prisch@hwhlaw.com

        Attorneys for Defendant,
        The Ohio Willow Wood Company

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of February, 2014, a true and accurate copy of the foregoing was electronically filed with the Court. Notice of this filing will be automatically sent by the Court's CM/ECF system.

/s/ F. Michael Speed
F. Michael Speed, Jr.
